IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEGAN HOOKEY, OM-6044 ) | |
| ) | Civil Action No. 08 - 1733 |
| Plaintiff, ) | |
| ) | District Judge Joy Flowers Conti |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| JOSEPH PELZER, Warden; CHERYL ) | |
| McGAVITT, Head Nurse; EDWARD ) | |
| STRAW, Captain; WASHINGTON ) | |
| COUNTY; MICHAEL FAGELLA, District ) | |
| Attorney; LISA SUTHERLAND, Adult ) | |
| Probation Officer; BRIAN GORMAN, Public ) | |
| Defender; PAUL M. POZONSKY, Judge and ) | |
| JOHN C. PETTIT, ) | |
| ) | |
| Defendants. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendant Paul M.

Pozonsky (ECF No. 41) be granted, that the Motion to Dismiss filed by Defendant Brian Gorman

(ECF No. 52) be granted and that the Motion to Dismiss filed by Defendant Michael Fagella (ECF

No. 57) be granted.  Plaintiff's claims remain pending against Defendants Joseph Pelzer, Cheryl

McGavitt, Edward Strawn, and Lisa Sutherland.[1]`

## II.    REPORT

Plaintiff, Megan Hookey, an inmate currently confined at the State Correctional Institution

at Muncy, Pennsylvania, commenced this action under 42 U.S.C. § 1983 alleging violations of her

constitutional rights against the following Defendants:  Jane and John Doe, Washington County

---

1.  The Court takes judicial notice that John C. Pettit, former District Attorney of Washington
County died on October 30, 2010.

Officials; Joseph Pelzer, Warden of the Washington County Jail (WCJ); Edward Strawn, Captain at the WCJ; Cheryl McGavitt, Head Nurse at the WCJ; John C. Pettit, former District Attorney for Washington County; Michael Flagella, Assistant District Attorney for Washington County; Lisa Sutherland, Washington County Adult Probation Officer; Brian Gorman, Public Defender in the Washington County Public Defenders Office; and the Honorable Paul M. Pozonsky, Judge of the Court of Common Pleas of Washington County. All of the Defendants are sued in their individual and official capacities.

## A. Standard of Review

Presently pending are motions to dismiss filed by Defendants Pozonsky (ECF No. 41), Gorman (ECF No. 52) and Fagella (ECF No. 57). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the

complaint.  *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir.

2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must

the court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp., 550 U.S. at

555 (citing Papasan v. Allain, 478 U.S.  265, 286 (1986)).  "Factual allegations must be enough to

raise a right to relief above the speculative level."  Bell Atlantic Corp., 550 U.S. at 555.  *See also*

Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the

Complaint need not contain detailed factual allegations, it must contain more than a "formulaic

recitation of the elements" of a constitutional claim and must state a claim that is plausible on its

face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on

the standard set forth therein).

      Courts generally consider the allegations of the complaint, attached exhibits, and matters of

public record in deciding motions to dismiss.  Pension Benefit Guar. v. White Consol. Indus., Inc.,

998 F.2d 1192, 1196 (3d Cir. 1993).  Factual allegations within documents described or identified

in the complaint also may be considered if the plaintiff's claims are based upon those documents.

*Id*. (citations omitted).  Moreover, a district court may consider indisputably authentic documents

without converting a motion to dismiss into a motion for summary judgment.  Spruill v. Gillis 372

F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.

1997).

      Finally, a court must employ less stringent standards when considering pro se pleadings than

when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  In a §

1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable

law, irrespective of whether a *pro se* litigant has mentioned it by name."  Higgins v. Beyer, 293 F.3d

683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688 ). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

B. Relevant Allegations and Facts of Record

On August 17, 2006, Plaintiff pleaded guilty to charges of reckless endangerment, terroristic threats, theft by unlawful taking, possession of paraphernalia, and simple possession. She was sentenced to a term of 3-23 months for the reckless endangerment charge, and consecutive terms of 12 months probation on the drug charges and 23 months probation on the terroristic threats and theft by unlawful taking charges; she did not appeal her original sentence or file timely post sentence motions.

On November 25, 2006, Plaintiff was arrested in Allegheny County on charges of tampering with evidence, criminal conspiracy, possession of cocaine, and possession of drug paraphernalia. Based on this arrest, on December 15, 2006, Washington County issued a bench warrant against Plaintiff for probation violations. Plaintiff subsequently was charged with additional crimes in Allegheny County on December 18, 2006.[2] On January 6, 2007, she was arrested and taken into

---

2. Specifically, Plaintiff was charged with and eventually pleaded guilty to terroristic threats and theft by unlawful taking in relation to the December arrest, and tampering with evidence, possession of illegal narcotics, possession of drug paraphernalia, and criminal conspiracy to tamper with evidence in relation to the November arrest. The guilty pleas were entered April 28,

continue...

custody at the Washington County Jail (WCJ) due to the bench warrant issued on December 15, 2006.

While she was in custody at the WCJ, Plaintiff alleges that she was involved with County Officials in sexual acts that were arranged, approved but never disciplined by the Defendants. Plaintiff asserts that the sexual relations and criminal acts between County Officials, jail employees, Plaintiff and other inmates were a custom and practice exercised by Washington County. On February 14, 2007, Plaintiff was found in violation of her probation and her probation was revoked and she was sentenced to serve the balance of her probation at the Washington County Correctional Facility. On May 21, 2007, Plaintiff was released from custody on parole for the balance of her sentence.

On June 14, 2007, Plaintiff alleges that she had her first pregnancy exam. Although she was released to an Allegheny County address, Defendant Adult Probation Officer Lisa Sutherland made Plaintiff report directly to her at the Washington County Probation Office. She avers that she was harassed by various unknown persons to abort the child she was carrying. On August 14, 2007, Plaintiff met with Defendant Petit who gave her $500.00 and instructed her to have an abortion. Plaintiff took the money and deposited it into her National City account. Due to numerous threats by unknown County Officials, Plaintiff moved into a family member's home out of fear of being alone.

On September 11, 2007, Plaintiff met with current District Attorney Steven M. Toprani and another unidentified man in her family member's home. Plaintiff informed Toprani of the corruption

_____

2.  ...continue
2008.

of Washington County Jail and he promised to help Plaintiff but never did. Around the time of the visit with Toprani the plaintiff got in touch with County Commissioner Diana Irey via telephone. Comissioner Irey asked Plaintiff to appear in front of some sort of board but she declined due to the fear she was experiencing.

Defendant Lisa Sutherland contacted the North Layette Police Department located in Allegheny County and lied to them stating there was a bench warrant out for Plaintiff's arrest. Plaintiff was arrested and taken to the Allegheny County Jail without ever seeing the alleged warrant.

Plaintiff violated the terms of her probation when she was arrested and charged on October 17, 2007, with charges that subsequently were dropped on October 24, 2007. She was released on November 5, 2007 and again arrested on November 7, 2007. On November 16, 2007, while housed in Allegheny County Jail she was served with a Washington County bench warrant and transported to the WCJ. From October 16, 2007 through January 23, 2008, Plaintiff was denied furloughs to see her OBGYN for prenatal visits and could not attend scheduled appointments. She further asserts she was kept in an unsanitary for approximately ninety (90) days. During those ninety days, Plaintiff was denied out of cell recreation, law library, legal materials, or access to a law library. As a result, Plaintiff suffered preeclampsia[3] that went untreated until she was transferred to SCI-Muncy. She further asserts that she was denied showers, clean uniforms and laundry service, which led to a vaginal infection.

Plaintiff claims that female inmates had no access to law materials or counsel and were only allowed to ask prison employee Jay Greene legal questions that he could not answer. Plaintiff's

3. According to www.WebMD.com, preeclampsia is a condition experienced during pregnancy that is marked by high blood pressure and high levels of protein in the urine.

denial of access to the courts resulted in her inability to challenge her illegal incarceration. On December 5, 2007, Plaintiff filed a grievance challenging her living conditions but no action was taken.

Subsequently, on January 17, 2008, a parole violation hearing was held before Judge Pozonsky where Defendant Sutherland allegedly lied and presented false evidence against Plaintiff to have her committed to prison. Defendant Gorman knew of Plaintiff's pregnancy and knew of Sutherland's allegedly false testimony but did nothing to aid Plaintiff as was his responsibility. Gorman is the only Public Defender assigned to Judge Pozonsky and knows of the corruption in his courtroom. Judge Pozonsky sentenced Plaintiff to a term of six (6) months to five (5) years on one count of terroristic threats and one count of theft by unlawful taking. On January 31, 2008, Plaintiff filed a *pro se* notice of appeal from this sentence.

On January 23, 2008, Plaintiff arrived at SCI-Muncy. On March 12, 2008, she gave birth to a son, four weeks late. On July 28, 2008, her son was kid napped and she never saw him again.

On March 17, 2010, the Superior Court of Pennsylvania vacated Plaintiff's sentence and the case was remanded back to the Court of Common Pleas for re-sentencing. On May 21, 2010, Plaintiff appeared before Judge Pozonsky *via* video conference. At that time, she requested to be present in person at her re-sentencing, which was continued until August 5, 2010. On that date, Judge Pozonsky imposed a sentence of from 6 months to 5 years for the Terroristic Threat charge and a consecutive term of from 6 months to 12 months for the Theft by Unlawful Taking charge. (ECF No. 42-1, p. 13). Plaintiff filed a Motion to Modify Illegal Sentence in state court on August 11, 2010.

Plaintiff asserts that she is being falsely imprisoned and that Judge Pozonsky is only keeping her imprisoned to cover his part in corruption scandal. She maintains that the sole purpose of her incarceration is to prevent paternity proceedings to prove her son was conceived while she was in custody at the WCJ. There are no factual averments as to the nature of the corruption scandal or how any of the Defendants actually were involved in any such scandal.

C. <u>Motion to Dismiss by Judge Pozonsky</u>

In this action, plaintiff is seeking to impose liability against the Honorable Paul M. Pozonsky, Judge of the Court of Common Pleas of Washington County, Pennsylvania. Defendant Pozonsky moves to dismiss Plaintiff's Complaint because Plaintiff's claims against him in his official capacity are barred by the Eleventh Amendment and Plaintiff's claims against him in his individual capacity is barred by absolute judicial immunity.

In this regard, in a limited number of circumstances, government officials are entitled to absolute immunity from a suit for damages. <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269 (1993). The grant of absolute immunity from suit has been used "quite sparing," and is confined to official functions in which the exposure to liability would invariably impede the official in the performance of his or her duties. <u>Forrester v. White</u>, 484 U.S. 219, 223-24 (1988).

Judges generally are accorded absolute immunity from the award of money damages for the performance of "truly judicial acts" that are performed within their lawful jurisdiction. <u>Mireles v. Waco</u>, 502 U.S. 9 (1991); <u>Forrester v. White</u>, 484 U.S. 219, 223-24 (1988). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, <u>Mireles</u>, 502 U.S. at 11-12, or are taken as a result of a conspiracy with others. <u>Dennis v.</u>

Sparks, 449 U.S. 24, 27 (1980). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " Mireles, 502 U.S. at 9 (quotation omitted).

It is only when a judge has acted in the "clear absence of all jurisdiction" will he be deprived of his absolute immunity. Stump v. Sparkman, 435 U.S. 349, 356 (1978). However, judicial acts taken "in excess" of a judge's subject matter jurisdiction are protected by judicial immunity, even when they are alleged to have been done maliciously or corruptly. Stump, 435 U.S. at 356, n.7 (citing Bradley v. Fisher, 80 U.S. 335, 351-52 (1871)). In Stump, the Supreme Court explained the distinction between lack of subject matter jurisdiction and excess of jurisdiction as follows. A probate judge, having jurisdiction over only wills and estates, would be acting in the clear absence of his jurisdiction should he try a criminal case and, as a result, he would not be immune from liability for his actions. *Id*. However, a criminal court judge that uses his judicial authority to convict a defendant of a nonexistent crime is merely acting "in excess" of his jurisdiction and, therefore, would be immune. *Id*.

Here, Plaintiff alleges that Defendant Pozonsky imposed an illegal sentence. Because such action, even if true, was taken within his judicial authority, he is entitled to absolute immunity from individual liability in this action. *Accord* Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 768 (3d Cir. 2000).

Plaintiff also seeks to assert liability against Judge Pozonsky in his official capacity. A suit against a state government official in his official capacity is really a suit against the state. Will v.

Michigan Department of State Police, 491 U.S. 58 (1989). By contrast, officers sued in their personal capacity come to court as individuals. Hafer v. Melo, 502 U.S. 21, 26. Judge Pozonsky is a Judge in the Court of Common Pleas of Washington County, which is an entity of the Commonwealth of Pennsylvania. *See* Goodson v. Maggi, Civil Action No. 08-44, 2009 WL 2960386, 6 (W.D. Pa. Sept. 14, 2009) (citing Callahan v. City of Philadelphia, 207 F.3d 668, 673 (3d Cir.2000) (holding trial courts within the First Judicial District are state entities and thus are not "persons" within Section 1983). Thus, suing Judge Pozonsky in his official capacity is considered a suit against the Commonwealth of Pennsylvania.

Plaintiff's claim against Defendant Pozonsky in his official capacity are barred by the Eleventh Amendment to the United States Constitution. The withdrawal of jurisdiction in the Eleventh Amendment confers upon the individual states immunity from suit in the federal courts. This grant of sovereign immunity encompasses not only suits in which a state is a named defendant but also extends to suits brought against state agents and state instrumentalities that have no existence apart from the state, *see* Regents of the University of California v. Doe, 519 U.S. 425 (1997); Alabama v. Pugh, 438 U.S. 781, 782 (1978), and applies to suits brought by citizens of the defendant state as well. *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984).

Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute. A state may expressly waive its grant of sovereign immunity by state statute or constitutional provision. In addition, Congress can abrogate the States' Eleventh Amendment immunity through a statute enacted under constitutional authority granting Congress the power to regulate the activities of the states. *See, e.g.*, Pennsylvania v. Union Gas Co., 491 U.S. 1, 15 (1989) (Commerce Clause, which allows

Congress to restrict interstate trade activity); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 246 (1985) (section five of the Fourteenth Amendment, which allows Congress to enforce the provisions of the Fourteenth Amendment). However, Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Atascadero, 473 U.S. at 246.

The Commonwealth of Pennsylvania has not waived its grant of sovereign immunity under the Eleventh Amendment. In fact, the Commonwealth specifically has reserved its immunity against federal suits in 42 Pa. Cons. Stat. Ann. § 8521(b), which provides that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." None of the exceptions to sovereign immunity contained in 42 Pa. Cons. Stat. § 8522 are applicable to the Plaintiff's allegations. Moreover, the federal courts repeatedly have held that Congress did not abrogate the state's Eleventh Amendment immunity when it enacted the Civil Rights Act, 42 U.S.C. § 1983. *See, e.g.*, Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979); Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378 (M.D. Pa. 1995) (holding that states' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996). Consequently, Plaintiff's Complaint must be dismissed against Defendant Pozonsky in his official capacity. *Accord* Benn v. First Judicial District, 426 F. 3d 233, 239-40 (3d Cir. 2005) (holding that the Philadelphia Court of

Common Pleas was entitled to Eleventh Amendment immunity); Chilcott v. Erie County Domestic Relations, 283 Fed. App'x 8, 10 (3d Cir. 2008).

Based on the discussion above, the Motion to Dismiss filed by Judge Pozonsky should be granted.

### D. Motion to Dismiss filed by Defendant Michael Fagella

In this action, Plaintiff also is seeking to impose liability against Michael Flagella, Assistant District Attorney for Washington County. Defendant Flagella moves to dismiss Plaintiff's Complaint based on his absolute immunity.

As judges are accorded absolute immunity in the performance of "truly judicial acts" performed within their lawful jurisdiction, certain other specified officials, such as administrative law judges, and federal and state prosecutors, enjoy absolute immunity in the performance of functions that are "closely associated with the judicial process." Cleavinger v. Saxner, 474 U.S. 193, 200 (1985). Absolute immunity shields not only these decision makers, but also other individuals who perform discretionary tasks that play an integral part in the decision making process. *Id*. Thus, where the official's responsibilities are closely analogous to the adjudicative functions of a judge, or are intimately associated with the judicial process itself, that official may enjoy absolute immunity from suit for actions taken to fulfill those particular responsibilities. Buckley v. Fitzsimmons, 509 U.S. at 271.

Prosecutors are subject to varying levels of official immunity. It is well established that a state prosecuting attorney is absolutely immune from liability under 42 U.S.C. Section 1983 for his or her actions which are related to the initiation and prosecution of a criminal action. Imbler v. Pachtman, 424 U.S. 409, 431 (1976). *See also* Burns v. Reed, 500 U.S. 478 (1991). The immunity

extends to responsibilities discharged in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior "intimately associated with the judicial phases" of litigation. "[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of prosecution and actions apart from the courtroom." Imbler, 424 U.S. at 431 n. 33.

Courts confronted with claims challenging a prosecutor's actions must utilize a functional analysis to determine whether or not the prosecutor acted within his or her "judicial capacity" when attempting to apply absolute immunity. Ross v. Morgan, 638 F.2d 646, 648 (3d Cir. 1981). *See also* Rose v. Bartle, 871 F.2d at 343. Actions that relate to the prosecutor's role as an advocate are "judicial" actions. Mancini v. Lester, 630 F.2d 990, 993 (3d Cir.1980). The decision to initiate a prosecution is at the core of a prosecutor's judicial role. Imbler, 424 U.S. at 430-31. In that regard, a prosecution in protected by the doctrine of absolute immunity, even where he acts without a good faith belief that any wrongdoing has occurred. Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989). *See also* Ernst v. Child and Youth Services of Chester County, 108 F.3d 486 3d Cir. 1997) (caseworkers were entitled to absolute immunity for their actions discharged on behalf of state in preparing for, initiating, and prosecuting dependency proceedings); Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) (even groundless charges are protected by absolute immunity in the interest of maintaining the vigorous prosecution of the crime). This immunity extends to any acts the prosecutor undertakes "as the state's 'advocate,' " Yarris v. County of Delaware, 465 F.3d 129, 136 (3d Cir.2006), and is not defeated by allegations that the prosecutor acted in bad faith or committed perjury or falsified evidence. Davis v. Grusemeyer, 996 F.2d 617, 630 n. 27 (3d Cir. 1993), *overruled on other grounds* by Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644

(3d Cir. 1998). Thus, it is well settled that prosecutors are absolutely immune from claims for malicious prosecution, for solicitation of perjured testimony, and for conspiracy with state actors while engaged in an advocacy role. *See* Rose; Imbler; Ross.

Moreover, the doctrine of absolute prosecutorial immunity precludes conspiracy-based claims as well. *See, e.g.*, Savage v. Bonavitacola, Civil No. 03-0016, 2005 WL 568045 (E.D. Pa. March 29, 2005) (plaintiff's allegation that the district attorney and all of the other defendants acted in concert and conspired to deprive him of his federal constitutional rights was dismissed as a result of absolute prosecutorial immunity); Hull v. Mallon, Civil No. 00-5698, 2001 WL 964115 (E.D. Pa. August 21, 2001) ("When the underlying activity is cloaked with prosecutorial immunity, a conspiracy claim is similarly precluded ..."); Flowers v. Marino, Civil No. 93-1212, 1993 U.S. Dist. LEXIS 12038, at *6-7 (E.D. Pa. August 25, 1993) ("Allegations that the district attorney and assistant district attorney conspired with others and that the wrongs [to plaintiff] were racially motivated, do not strip the prosecuting attorneys of their absolute immunity from civil damage claims," where the conduct complained of is "intimately associated with the judicial phase of the criminal process"); Barnes v. City of Coatesville, Civil No. 93-1444, 1993 WL 259329, at *8 (E.D. Pa. June 28, 1993) ("[Plaintiff's] allegation of conspiracy does not affect [the assistant district attorney's] entitlement to immunity .... [The assistant district attorney is] absolutely immune from liability for the Section 1983, 1985, 1986 and 1988 claims for malicious prosecution.").

The Court finds that the acts that the Plaintiff alleges against Defendant Fagella fall within the district attorney's prosecutorial function. Put simply, all of the alleged wrongful acts cited by Plaintiff concern the decision to prosecute and the handling of Plaintiff's prosecution once that decision was made. Accordingly, even if Plaintiff's allegations are true, Fagella is immune from

liability for his actions. As a result, his motion to dismiss should be granted. *Accord* <u>Richards v. Pennsylvania</u>, 196 Fed. App'x 82 (3d Cir. 2006) (holding that absolute immunity barred arrestee's civil rights claims against district attorney for, *inter alia*, malicious and selective prosecution). *See also* <u>Jones v. Middletown Tp.</u>, 253 Fed. App'x 184 (3d Cir. 2007) (holding that absolute immunity applied to preclude imposition of liability on a malicious prosecution claim).

Plaintiff also seeks to impose liability against Defendant Flagella in his official capacity. The claim against District Attorney Fagella in his official capacity is a claim against the municipal entity. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). Defendant Flagella is an employee of the Washington County District Attorneys Office. Consequently, Plaintiff's official capacity claim against him must be construed as asserting liability against Washington County.

In this regard, in <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, *i.e.*, through application of the doctrine of *respondeat superior*. Instead, the Court concluded that a governmental unit may be liable under section 1983 only when its "policy" or "custom," whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, directly inflicted the injury. <u>Monell</u>, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible, *i.e.*, acts that the municipality has officially sanctioned or ordered. *Id*. In <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986), the Court further clarified that "municipal liability under § 1983 attaches where--and only where--a

deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483 (citation omitted).

Moreover, mere identification of a policy or custom is not enough to establish municipal liability; a plaintiff also must establish causation. In this regard, a plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation at issue. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 405 (1997) (a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights).

As set forth above, the County cannot be liable for any constitutional deprivations suffered by Plaintiff unless "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton, 489 U.S. at 385. The Supreme Court has instructed that "policy" is made when a decisionmaker possessing final authority over the subject matter issues an official proclamation, policy, or edict. Pembaur, 475 U.S. at 481. Custom can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. Monell, 436 U.S. at 690. *See also* Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

In the case at bar, Plaintiff has not identified any policy or custom attributable to the County *via* Defendant Fagella.[4] In this regard, Plaintiff has not set forth any evidence of any similar

---

4. While she does make a blanket allegation that the County tolerated a custom or policy of allowing sexual assaults against female inmates at the WCP, such allegations pertain to her
                                                                                    continue...

incidents that have occurred in the past, save for the one in which she was involved, to prove some pattern of conduct that could establish a custom or policy. It is well settled that a single incident of unconstitutional behavior, without any direct involvement by a municipal policy maker, is not sufficient to impose municipal liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); City of Oklahoma v. Tuttle, 471 U.S. 808, 822 (1985); Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (plaintiff's mere assertion of the incident at issue, plus vague assertions about the police department's failure to investigate other wrongdoings, did not provide sufficient proof of a policy or custom to satisfy the dictates of section 1983).

Nor has Plaintiff set forth any allegations to establish liability against Washington County on the basis of its failure to properly train. In this regard, to establish liability on a failure to train theory, Plaintiff must set forth specific allegations that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001) (citing City of Canton, 489 U.S. at 390).

In the case at bar, however, Plaintiff has not identified any specific training, supervision or disciplinary actions that were deficient. Nor has she established that training, supervision and/or discipline were not provided as needed. Moreover, she fails to make any specific factual allegations that Washington County is liable based on a policy or custom of tolerating sexual abuse. Finally, she fails to allege with any specificity that any similar conduct occurred in the past such that Washington County should have been aware that an unreasonable risk of harm existed. *See* Reitz

---

4. ...continue
claims against the WCP Defendants in their official capacities and should be addressed by those parties in future pleadings.

v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) ("the record before us is critically deficient of evidence on which a jury reasonably could have based its conclusion that [the municipality] was deliberately indifferent to the need to train . . . and that this failure to train was the actual cause of the plaintiffs' injuries.").  Accordingly, Plaintiff's claim against Washington County should be dismissed for failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983. *Accord* Barr v. Camelot Forest Conservation Ass'n., Inc., 153 Fed. App'x 860, 863 (3d Cir. 2005) (affirming dismissal of plaintiff's suit against Office of District Attorney because the amended complaint was devoid of any allegation that an official policy, custom, or practice caused the alleged deprivation); Patterson v. City of Philadelphia, Civil No. 08-2140, 2009 WL 1259968, at *12 (E.D. Pa. May 01, 2009) (dismissing Plaintiff's failure to train claim against District Attorney).

## F. Defendant Gorman

Also pending before the Court is the Motion to Dismiss filed by Defendant Gorman (ECF No. 52).  For the reasons that follow, his Motion to Dismiss should be granted.

Plaintiff seeks to impose liability against Defendant Gorman under 42 U.S.C. § 1983.  To state a claim under section 1983, a plaintiff must meet two threshold requirements:  1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).  A person raising a civil rights claim for damages under section 1983 first must demonstrate that the defendant is a person acting under color of state law, *i.e.*, a state actor.  If the record does not reflect that the defendant acted under color of state law when engaged in the alleged misconduct, a civil rights claim

under section 1983 fails as a matter of jurisdiction, <u>Polk County v. Dodson</u>, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838 (1982).

Plaintiff seeks to impose liability against Brian Gorman, her criminal defense attorney. A criminal attorney is not a "state actor" for purposes of a section 1983 claim, regardless of whether the attorney is a private attorney or a public defender. Appointed counsel in a state criminal prosecution, though paid and ultimately supervised by the State, does not act "under color of state law" for purposes of liability under 42 U.S.C. § 1983 for acts taken in the normal course of conducting a defense. <u>Black v. Bayer</u>, 672 F.2d 309 (3d Cir.), *cert. denied*, <u>Stoica v. Stewart</u>, 459 U.S. 916 (1982); <u>Henderson v. Fisher</u>, 631 F.2d 1115, 1119 (3d Cir. 1980). Moreover, a public defender does not act under color of state law for purposes of section 1983 liability when performing the traditional role of counsel for a criminal defendant. <u>Polk County v. Dodson</u>, 454 U.S. 312, 315 (1981). A public defender, although paid by the state, exercises "independent judgement on behalf of his client." *Id*. at 321. Because the function of a public defender is to represent his client in a manner that conflicts with state interests, the Court concluded that a public defender could not be a state actor when acting as an advocate for his client. *Id*. at 324. Thus, Plaintiff cannot impose liability against his attorneys or the Office of the Public Defender for any of his claims that are not otherwise barred under the applicable limitations period. *See* <u>Nelson v. Rapp</u>, 381 Fed. App'x 125, 126 (3d Cir. 2010).

Notwithstanding, public defenders and appointed attorneys may be liable as state actors under section 1983 where they conspire with state officials to deprive a plaintiff of his constitutional rights.

Tower v. Glover, 467 U.S. 914, 920 (1984). In light of this, Plaintiff attempts to impose liability against her defense attorney by making conclusory allegations of conspiracy.

To demonstrate a conspiracy under section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). A plaintiff must allege conspiracy with particularity even though a heightened pleading standard does not apply to civil rights actions against individual defendants. Bieros v. Nicola, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). A complaint alleging a conspiracy must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). *See also* Loftus v. Southeastern Pa. Transp. Auth., 843 F. Supp. 981, 987 (E.D. Pa. 1994) ("While the pleading standard under [Fed. R. Civ. Proc.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").

In the instant action, Plaintiff has failed to allege any facts showing an agreement or plan formulated and executed by Defendants to achieve a conspiracy. Absent allegations showing any agreement to deny plaintiff's rights, he has failed to allege a claim of a conspiracy. *Accord* Mincy v. Klem, 2009 WL 331432, *5 (M.D. Pa. 2009); Ebersole v. Pennsylvania Dept. of Corrections,

2009 WL 1010521, *3 (M.D. Pa. 2009). Accordingly, Plaintiff's conspiracy claim is insufficient to impose liability against her criminal defense attorney and his motion to dismiss should be granted.[5]

## III.    CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendant Paul M. Pozonsky (ECF No. 41) be granted, that the Motion to Dismiss filed by Defendant Brian Gorman (ECF No. 52) be granted and that the Motion to Dismiss filed by Defendant Michael Fagella (ECF No. 57) be granted. Plaintiff's claims remain pending against Defendants Joseph Pelzer, Cheryl Mcganitt, Edward Strawn, and Lisa Sutherland.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights. Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2

Dated: January 31, 2011

Lisa Pupo Lenihan
United States Magistrate Judge, Chief

cc:    Megan Hookey, OM-6044
        SCI Muncy
        P.O. Box 180

---

5. *Accord* Bieros, 860 F. Supp. at 223 (complaint alleging conspiracy dismissed for failure to state a claim); Flanagan v. Shively, 783 F. Supp. 922, 928-29 (M.D. Pa.) (motion to dismiss granted because allegations were insufficient and conclusory), *aff'd*, 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993). *See also* Green v. City of Paterson, 971 F. Supp. 891 (D.N.J. 1997) (allegations failed to establish any factual basis for an agreement to deprive plaintiff of his constitutional rights).

Muncy, PA 17756-0180